UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

COLLIN TRAMBLE,                    )
                                   )
                                   )
          Plaintiff,               )
                                   )
     v.                            )          No.  4:12 CV 731 SNLJ
                                   )                      (JMB)
JAY CASSADY,                       )
                                   )
          Defendant.[1]            )

## REPORT AND RECOMMENDATION

This matter is before the Court on a *pro se* petition of Collin M. Tramble, III (hereinafter

"Tramble").  Tramble is a Missouri State prisoner seeking a Writ of Habeas Corpus, pursuant to

28 U.S.C. § 2254.  Tramble's petition has been referred to the undersigned Magistrate Judge for

a report and recommendation, pursuant to 28 U.S.C. § 636(b).  The Court concludes that the

matter may be resolved on the existing record, without the need for an evidentiary hearing.  The

Court recommends that the petition be denied.  The Court further recommends that no certificate

of appealability be issued.

## I. Background

### A.    General

Tramble was charged in the Circuit Court for the City of St. Louis with one count of first

degree murder and one count of armed criminal action.  In January 2008, a jury convicted

---

[1]Petitioner is presently incarcerated at the Jefferson City Correctional Center ("JCCC") in
Jefferson City, Missouri.  Inasmuch as Jay Cassady is superintendent of JCCC and thus is
Petitioner's custodian, he should be substituted for Ian Wallace as proper party respondent.  Rule
2(a), Rules Governing Section 2254 Cases in United States District Courts.

Tramble of the lesser included offense of second degree murder and armed criminal action. The court sentenced Tramble to concurrent terms of life in prison.

Tramble's charges stemmed from the murder of Ida Anderson on May 22, 2004. Anderson, a prostitute, was known on the street as "Smiley." Anderson's severely burned body was recovered from the remains of a vacant building which had burned on May 22, 2004. Investigators later determined that Anderson's death was the result of trauma to her head, consistent with blows inflicted with a pipe. Investigators recovered a bloody metal pipe near the fire scene.

It was not disputed that Tramble knew Ms. Anderson. Tramble was observed near the fire and appeared to have blood on his clothing. Among other witnesses, the State presented the testimony of Roy Ransom, who knew Tramble. Ransom testified that, on the day of the fire, Tramble stated that he had beaten or hit the "bitch," which was a reference to Anderson. The police arrested Tramble and located blood on his shoes and sweat pants. That blood matched Anderson's blood, as well as the blood on the metal pipe. It was Tramble's position that he found the pipe and picked it up, but then discarded it upon noticing that it was covered in blood.

As part of the investigation, between January and March 2005, the police interviewed Ransom three times. During those interviews, the police presented Ransom with photo line-ups, each of which included Tramble's photograph. Ransom gave different answers to the police during each photo line-up. With the third photo line-up, Ransom identified Tramble as the person who told him about beating Ms. Anderson.

**B.**     <u>Pretrial and Trial Matters</u>

Tramble was represented at trial by an Assistant Public Defender, who was assisted by an experienced second chair attorney. Prior to trial, defense counsel filed several motions seeking to suppress evidence and statements, as well as motions to exclude certain scientific evidence. As relevant to the present § 2254 matter, defense counsel filed a motion to "suppress any in-court identification and all testimony regarding all out-of-court identifications" by Roy Ransom. Defense counsel argued that the police procedures were improperly suggestive and were likely to result in a misidentification at trial. (Resp. Exh. B at 19, 23-24)

The trial court conducted an evidentiary hearing on Tramble's motions, including his motion to suppress identification evidence and testimony by Ransom. The court issued a written Judgment and Order denying Tramble's motions. The court held that the police procedures used for the photographic line-ups were "fair and not impermissibly suggestive," and "did not taint" the identification by Ransom. (Resp. Exh. B at 30, 41-42)

Defense counsel also retained the services of Gene Gietzen, a forensic scientist who provided, among other things, blood splatter and drying time analysis. The defense expected the State to present expert testimony in an attempt to prove that the blood on the metal pipe would have dried quickly on the day of the murder. Such testimony would have undercut Tramble's explanation that he found the pipe, picked it up, and then discarded it when he realized it was covered in blood.

Mr. Gietzen conducted an extensive review of the State's evidence and assisted defense counsel in preparing to rebut expected evidence and testimony relating to the prosecution expert's blood splatter analysis and blood drying time analysis. Mr. Gietzen reviewed the

analysis conducted by prosecution expert Jenna Oakes-Smith, as well as potential expert Michael Von Stratton. Ms. Oakes-Smith had conducted an experiment related to the time it would have taken for the blood on the metal pipe to dry. Mr. Gietzen took issue with her analysis. (Resp. Exh. F at 48; Exh. G at 197-223)

Prior to trial, Tramble had indicated a desire to testify in his own defense. As such, defense counsel disclosed Tramble's criminal history during voir dire in an effort to identify potentially biased jurors. During opening statement, defense counsel outlined an explanation as to how Tramble ended up with Ms. Anderson's blood on his pants and shoes. In anticipation of Ms. Oakes-Smith's testimony, defense counsel also referenced the anticipated testimony of Mr. Gietzen. (Resp. Exh. A at 470, 479-81)

During its case-in-chief, the State presented the testimony of Roy Ransom, which included an in-court identification of Tramble by Ransom. The State did not introduce evidence of Ransom's prior, out-of-court identification. Defense counsel cross-examined Ransom regarding the inconsistencies in his prior statements to the police, including Ransom's initial failure to identify Tramble as the person who said he had hit the victim in the head. (Resp. Exh. A at 592-615)

The State, however, did not call Ms. Oakes-Smith and rested without presenting the expert blood splatter and drying time evidence. As a result, defense counsel was given time to reconsider whether to call Mr. Gietzen as a witness. Mr. Gietzen advised counsel that he did not believe his testimony was necessary. Defense counsel concluded that, as a matter of strategy, it was no longer wise to have Mr. Gietzen testify. (Resp. Exh. F at 45-53)

The defense presented two witnesses in its defense. Defense counsel, including second chair counsel, advised Tramble that, in their opinion, Tramble should not testify. Prior to resting, Tramble passed a note to one of his attorneys indicating he did not want to testify. (Resp. Exh. F at 50-51) The trial court conducted an inquiry, outside of the jury's presence, into whether Tramble would or would not testify. (Resp. Exh. A at 699-704) The court placed Tramble under oath and took steps to ensure that Tramble understood his right to testify or not testify in his own defense, and that the jury could not use his failure to testify against him. The court also ensured that Tramble had an opportunity to discuss the decision with his defense attorneys. After being advised of his rights and confirming his opportunity to consult with counsel, Tramble stated that it was his decision not to testify. Thereafter, the court asked whether anyone was forcing, threatening, or intimidating Tramble into not testifying. In response, Tramble stated, "By no means," and "No sir." (Id. at 702-03) After this inquiry, the court found that Tramble was aware of his right to testify or not testify, and that he made the decision not to testify "voluntarily and freely and intelligently." (Id. at 703-04)

During closing argument, defense counsel discussed the difficulty of proving innocence and reminded the jury that it was the prosecution's burden to prove Tramble guilty beyond a reasonable doubt. In rebuttal closing, the prosecutor seized on this argument, as well as representations made by defense counsel during opening statement, and the following exchange occurred:

> **Prosecutor:** The defendant says well, I don't have to prove him innocent. For a half hour [in] the opening statement [he] told you how he was going to prove him innocent.
> **Defense Counsel:** Objection, Your Honor.
> **Court:** Excuse me?
> **Defense Counsel:** Shifting the burden, Your Honor.

**Court:** Overruled. Let's proceed. This is not evidence. This is closing argument.[2]

**Prosecutor:** Told you for a half hour how he was going to prove the defendant not guilty and he didn't. Talked about experts and he didn't bring in anybody.

(Id. at 802-03)

The jury convicted Tramble of the lesser included offense of second degree murder, as well as armed criminal action. The court sentenced Tramble to concurrent life terms of imprisonment.

**C.      Direct Appeal**

Tramble appealed his conviction to the Missouri Court of Appeals. Tramble's direct appeal focused on two issues. First, Tramble argued that the trial court erred in admitting Ransom's identification of Tramble. Second, Tramble argued that the trial court erred with respect to the prosecutor's rebuttal argument. The court of appeals denied both arguments and affirmed Tramble's conviction in a summary order accompanied by a detailed supplemental memorandum. (Resp. Exh. E)

With respect to the Ransom identification, the court of appeals noted that the State did not attempt to introduce any evidence of Ransom's prior, out-of-court identification of Tramble. (Resp. Exh. E at 13) Regarding Ransom's in-court identification of Tramble, the court of appeals explained that, because Ransom had known Tramble for several years prior to Ms. Anderson's murder, the "procedure used by the police in obtaining out-of-court identifications was irrelevant to Ransom's ability to identify [Tramble] during trial." (Id. at 12)

As to Tramble's second point regarding the prosecutor's rebuttal argument, the court of appeals found no error, explaining that "[a] trial court has broad discretion in its control of the

---

[2] The court's comment was consistent with its instructions, which it gave to the jury before closing argument. (Resp. Exh. A at 704-05)

scope of closing statements." (Resp. Exh. E at 13 (citing State v. Tinsley, 143 S.W.3d 722, 734 (Mo. App. S.D. 2004)) The court of appeals concluded that, "[v]iewed in their entirety, it is clear that the State's references were to remind the jury that opening statements are not evidence and that defendant's counsel had not produced the evidence he promised during his opening statement. Furthermore, … the State's argument was a fair response to Defendant's opening and closing statements and was not unwarranted." (Id. at 14-15 (relying on State v. Sidebottom, 753 S.W.2d 915, 920 (Mo. Banc 1988); State v. Dollens, 878 S.W.2d 875, 876-77 (Mo. App. E.D. 1994)).

## D.    Post-Conviction 29.15 Hearing and Appeal

Following the denial of his direct appeal, Tramble filed a motion for post-conviction relief, pursuant to Missouri Rule 29.15. With the assistance of appointed counsel, Tramble raised four claims of ineffective assistance of trial counsel. First, Tramble claimed that trial counsel was ineffective in failing to call Gene Gietzen as a witness. Second, Tramble argued that trial counsel was similarly ineffective in mentioning Mr. Gietzen during opening statement. Third, Tramble argued that trial counsel should not have disclosed Tramble's prior convictions during voir dire. Finally, Tramble contends that trial counsel was ineffective in advising him not to testify. (Resp. Exh. G at 128-67)

A hearing was held on Tramble's Rule 29.15 motion. In addition to hearing from Tramble, the motion court heard the testimony of trial counsel and Mr. Gietzen. Trial counsel explained that Mr. Gietzen was retained to rebut anticipated testimony from two experts – Ms. Oaks-Smith and Mr. Von Stratton. The State's failure to call either expert resulted in a change of strategy. Counsel requested and was given time to consider options. Counsel conferred with

Mr. Gietzen who advised he did not think he should testify. Counsel also conferred with his second chair and Tramble. After thoroughly considering the matter, trial counsel concluded that calling Mr. Gietzen might do more harm than good to the defense. (Resp. Exh. F at 37-55; Exh. G at 224-229)

Similarly, trial counsel also explained that, when the trial started, he expected Tramble to testify in his own defense and prepared Tramble to testify. Had Tramble testified, his prior convictions would have been used to impeach him. As such, it was a strategic decision to disclose Tramble's prior convictions during voir dire. Because the State did not put on some of the evidence and testimony that was anticipated, trial counsel and his second chair both discussed with Tramble the advantages and disadvantages of testifying. Ultimately, Tramble chose not to testify. (Resp. Exh. F at 48-51)

After hearing testimony, the motion court concluded that trial counsel's voir dire and opening statement accurately reflected the anticipated strategy for the defense. Trial counsel thoroughly explored the information and potential value of Mr. Gietzen's testimony, as well as the risks of having Tramble testify. In view of changed circumstances, trial counsel made an informed strategic decision not to call Mr. Gietzen and to recommend that Tramble not testify. The motion court concluded that Tramble's decision not to testify was made knowingly and voluntarily. (Resp. Exh. G at 224-37)

Tramble appealed the denial of his Rule 29.15 motion, raising four points of alleged error for review. Tramble appealed the issue relating to defense counsel's reference to the expert testimony of Mr. Gietzen during opening statement, counsel's failure to call Mr. Gietzen as a

witness, counsel's failure to call Tramble to testify, and disclosing Tramble's prior convictions during voir dire.

The court of appeals denied each of Tramble's points in a summary order, accompanied by a more detailed supplemental memorandum. Applying the familiar standard outlined in Strickland v. Washington, 466 U.S. 668 (1984), the court of appeals concluded that counsel's decisions were made after a thorough investigation and, therefore, "virtually unchallengeable." (Resp. Exh. J at 4) As for the failure to call Tramble as a witness, the record defeated any such claim because it was Tramble's decision not to testify. (Resp. Exh. J)

## II. <u>Federal Habeas Petition -- Summary of Grounds Arguably Raised</u>

Tramble's petition, as filed, nominally identifies only two grounds for relief.[3] First, Tramble contends that the trial court erred when it denied his motion to suppress the out-of-court identification by prosecution witness Roy Ransom. Second, Tramble takes issue with the prosecutor's rebuttal closing argument during which the prosecutor referred to defense counsel's opening statement. In support of his second ground, however, Tramble alleges that his trial counsel simply abandoned him and provided no defense at all.

The State of Missouri filed a response which addressed the following issues: (1) whether the trial erred in failing to suppress the Roy Ransom identifications; (2) whether the trial court erred in permitting the prosecutor's rebuttal closing argument which touched on defense counsel's failure to prove Tramble innocent; (3) whether defense counsel was ineffective with respect to defense expert Gene Gietzen; and (4) whether defense counsel was ineffective in

_____

[3] Tramble filed his petition using a court-provided, fillable form, supplemented with handwritten pages describing his direct appeal and State post-conviction proceedings. In the space on the fillable form for Ground Three, Tramble states only "Please See Att", which the Court interprets to be a reference to an attached description of a third ground. No such description of a third ground is attached.

failing to call Tramble to testify in his own defense.  The State of Missouri does not allege that any of Tramble's grounds are procedurally defaulted or otherwise untimely.

In view of the State of Missouri's response, this Court has liberally construed Tramble's petition to encompass the following the following issues:

(1)     The Roy Ransom identification evidence; and

(2)     The impact of trial counsel's change in strategy during trial;
         a.      Did the trial court err in overruling defense counsel's objection to the prosecutor's rebuttal closing argument?
         b.      Was trial counsel ineffective with respect to the anticipated testimony of expert witness Gene Gietzen?
         c.      Was trial counsel ineffective in advising Tramble not to testify?

## III. <u>Analysis</u>

### A.     <u>Applicable Legal Standards</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") restricts the Court's review of Tramble's claims.  The Court's review is both "limited and deferential." <u>Lumholt v. Iowa</u>, 327 F.3d 748, 751 (8th Cir. 2003).  Under the AEDPA, a federal court may not grant relief to a state prisoner's claim unless the state court's adjudication of the claim "was contrary to, or involved an unreasonable application of, federal law as determined by the Supreme Court, or was an unreasonable determination of the facts in light of the evidence presented in state court."  <u>Cole v. Roper</u>, 623 F.3d 1183, 1187 (8th Cir. 2010) (citing 28 U.S.C. § 2254(d).  "A state court decision may be incorrect, yet still not unreasonable …."  <u>Id.</u> (citing <u>McGehee v. Norris</u>, 488 F.3d 1185, 1193 (8th Cir. 2009)).  A federal court may grant habeas relief "only if the state court decision is both incorrect <u>and</u> unreasonable."  <u>Id.</u>

"A state court decision is 'contrary to' the Supreme Court's clearly established precedent if the state court either 'arrives at a conclusion opposite that reached by [the Supreme] Court on a

question of law' or 'decides a case differently than th[e] [Supreme] Court has on a set of materially indistinguishable facts.'" <u>Bucklew v. Luebbers</u>, 436 F.3d 1010, 1016 (8th Cir. 2006) (quoting <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000)). "A state court decision is an 'unreasonable application' of Supreme Court precedent if it 'identifies the correct governing legal principle … but unreasonably applies that principle to the facts of the prisoner's case.'" <u>Id.</u> "Further, 'a determination of a factual issue made by a State court shall be presumed to be correct' in a federal habeas proceeding." <u>Cole</u>, 623 F.3d at 1187 (quoting 28 U.S.C. § 2254(e)(1)).

Some of Tramble's allegations involve claims of ineffective assistance of counsel. In order to prevail on such claims, Tramble must demonstrate both that counsel's performance was constitutionally deficient, and that he was prejudiced thereby. <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 694 (1984). "Judicial scrutiny of counsel's performance is highly deferential, indulging a strong presumption that counsel's conduct falls within the wide range of professional judgment." <u>Bucklew</u>, 436 F.3d at 1016 (citing <u>Strickland</u>, 466 U.S. at 689). Thus, "[u]nder <u>Strickland</u>, counsel's performance is 'measured against an objective standard of reasonableness,' and 'hindsight is discounted by pegging adequacy to counsel's perspective at the time investigative decisions are made, and by giving a heavy measure of deference to counsel's judgments.'" <u>Id</u>. (quoting <u>Rompilla v. Beard</u>, 545 U.S. 374, 380-81 (2005)).

<u>Strickland</u> "[p]rejudice is shown by demonstrating that counsel's errors were so serious that they rendered the proceedings fundamentally unfair or the result unreliable." <u>Id.</u> (citing <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 372 (1993)). In order to succeed, Tramble must prevail on

both prongs of the <u>Strickland</u> standard. <u>See</u> <u>Worthington v. Roper</u>, 631 F.3d 487, 498 (8th Cir. 2011) ("Failure to establish either <u>Strickland</u> prong is fatal to an ineffective-assistance claim.").

**B.      Grounds**

       **1.      Ground One - Photo Identification Evidence**

Tramble contends that the trial court erred when it refused to suppress the identification evidence and testimony of prosecution witness Roy Ransom. "Clearly established Federal law, as determined by the Supreme Court of the United States, requires a two-step inquiry into photographic arrays." <u>Schawitsch v. Burt</u>, 491 F.3d 798, 802 (8th Cir. 2007) (citing <u>Manson Brathwaite</u>, 432 U.S. 98, 114 (1977)). "The first step is to determine whether the array was impermissibly suggestive. If found so, the second inquiry is whether under the totality of the circumstances the array created a substantial risk of misidentification at trial." <u>Id.</u> <u>See also</u> <u>Simmons v. United States</u>, 390 U.S. 377, 384 (1968); <u>Palmer v. Clarke</u>, 408 F.3d 423, 435 (8th Cir. 2005).

Tramble's trial counsel filed a timely motion to suppress identification evidence associated with Roy Ransom. The trial court conducted an evidentiary hearing regarding the methods used to generate and present the photo line-ups to Ransom. A detective explained that the line-ups were prepared using a computer-assisted method for selecting photographs. The detective also testified as to the circumstances in which the line-ups were shown to Ransom. Defense counsel cross-examined the detective on both issues. After hearing this testimony and considering the evidence, the trial court found the testimony of the police officer to be credible, and that the photo line-up was fair, not impermissibly suggestive, and did not taint Ransom's identification. (Resp. Exh. B at 41-42).

12

On appeal, the court of appeals noted that the state did not attempt to introduce Ransom's out-of-court identification of Tramble at trial. The court of appeals concluded that the police photo line-up procedures were irrelevant to Ransom's ability to identify Tramble at trial because Ransom had known Tramble for years prior to the murder. (Resp. Exh. G at 22-23)

This Court must "presume that the findings of fact by [the] state court are correct unless the petitioner rebuts that presumption by clear and convincing evidence." Evans v. Luebbers, 371 F.3d 438, 441-42 (8th 2004). Tramble has identified no meaningful deficiency regarding the Missouri court's analysis of the alleged suggestiveness of the photo line-up procedures. In fact, Tramble admits that Ransom knew him prior to the murder.[4] Rather, Tramble seems to take issue with the fact that the police interviewed Ransom three times before Ransom told police that Tramble was the person who said he had hit the victim in the head. Those circumstances, including potential inconsistencies in Ransom's statements, were presented to the court in pretrial proceedings and to the jury. The police and Ransom were subjected to cross examination regarding Ransom's identification. Tramble has not identified any legal authority to support a claim that, even though he had a full and fair opportunity to litigate the veracity of Ransom's identification testimony, he is nonetheless entitled to habeas relief. The Court is not aware of any such authority.

The Court finds, therefore, that the decision of the state court regarding the identification evidence was not contrary to federal law and reflected a reasonable application of federal law.

---

[4] See Petition at 10 ("Mr. Ransom has known me for years."). "Even if it could be said that the identification technique used here was unduly suggestive, [the Eighth Circuit has] reasoned that 'when someone already familiar with a suspect is asked to comment on whether a recorded voice or image portrays the suspect … concerns [about the prejudicial effect of undue suggestiveness] are absent.'" United States v. Omar, 2015 WL 3393825 at *5 (8th Cir. May 27, 2015) (quoting United States v. Dobbs, 449 F.3d 904, 909-10 (8th Cir. 2006)).

Further, the Court concludes that the state court's adjudication of the Ransom identification issue resulted in a decision based on a reasonable determination of the facts in light of the evidence presented at the suppression hearing and at trial. Accordingly, Tramble is not entitled to habeas relief on the basis of the identification procedures used in his case.

### 2.    **Ground Two - Change in Defense Strategy**

Tramble's second stated ground nominally relates to the prosecutor's rebuttal closing argument. In particular, for his second ground, Tramble states, "The State use[d] [the] defense opening statement against [Tramble] in clos[ing] by simply saying defense did not prove defendant innocent or guilty." (ECF No. 1 at 11) For his supporting facts, Tramble claims defense counsel abandoned him,[5] provided no defense at all, and failed to call important witnesses, including expert witness Gene Gietzen.

Upon review of the supporting facts, it appears that Tramble's true focus is the impact of defense counsel's change of strategy. Therefore, the Court will liberally construe Tramble's petition and address the rebuttal closing issue, as well as defense counsel's change of strategy.[6]

_____

[5] To the extent Tramble's claim that his attorney abandoned him is taken literally, the record completely refutes such a claim. As explained herein, trial counsel made numerous informed decisions in preparing for trial, and adjusted his strategy and advice as the trial unfolded. To the extent Tramble intended his claim of abandonment to invite the Court to consider the cumulative effects of alleged errors, the Court is precluded from such review. See Cole v. Roper, 623 F.3d 1183, 1196 (8th Cir. 2010) (noting that Eighth Circuit precedent forecloses cumulative effects analysis); Middleton v. Roper, 455 F.3d 838, 851 (8th Cir. 2006).

[6] In his traverse (ECF No. 9, which is styled as a "Response"), Tramble included allegations of ineffective assistance of appellate counsel in connection with trial counsel's opening statement and failure to call expert witness Gene Gietzen. Assuming, without deciding, that the issue of ineffective assistance of appellate counsel is properly before this Court, Tramble cannot prevail on such a claim. As explained below, trial counsel was not ineffective with respect to his opening statement or decisions regarding

The Court's focus, however, is on claims that were raised in Tramble's direct appeal or as part of his Rule 29.15 motion.

### a.      Prosecutor's Reference to the Defense Counsel's Opening Statement

Tramble's second ground suggests a claim that the trial court should have sustained a defense objection to the prosecutor's rebuttal closing argument.  As noted above, during opening statement, defense counsel outlined a defense-oriented theory of the case which referred to the anticipated expert testimony of Gene Gietzen.  After the State rested its case without calling a blood splatter or blood drying time expert, defense counsel reconsidered his strategy and did not present as much evidence and testimony as originally planned.  During rebuttal closing, the prosecutor seized on the fact that defense counsel had not proven what was outlined during his opening statement.  Defense counsel objected, claiming that such argument amounted to burden shifting.  The trial court overruled the objection.

It is well established that the Fifth Amendment precludes a prosecutor from commenting on a defendant's failure to testify.  Similarly, a prosecutor may not imply that such failure to testify is evidence of guilt.  See Griffin v. California, 380 U.S. 609, 615 (1965); United States v. Gardner, 396 F.3d 987, 988 (8th Cir. 2005).  The Griffin rule applies "to both direct and indirect comments on a defendant's failure to testify."  Gardner, 396 F.3d at 989.  "When the prosecutor has neither directly commented on the defendant's silence, nor demonstrated an intent to draw attention to that silence, the issue is whether 'the jury would naturally and necessarily understand the comments as highlighting the defendant's failure to testify.'"  Id. (quoting Herin v. United States, 349 F.23d 544, 546 (8th Cir. 2003)).  A prosecutor's "[c]omments must be evaluated in

---

Mr. Gietzen.  As such, appellate counsel cannot now be faulted for failing to raise meritless issues.  See Dodge v. Robinson, 625 F.3d 1014, 1019 (8th Cir. 2010).

the context of the entire closing arguments and the evidence introduced at trial." Id. (citing United States v. Smith, 266 F.3d 902, 906 (8th Cir. 2001)). "In general, 'the government may comment on the failure of the defense, as opposed to the defendant, to counter or explain the evidence, [unless] the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.'" Id. at 991 (quoting United States v. Guzman, 781 F.2d 428, 432 (5th Cir. (1986)).

In addition to potentially running afoul of the Fifth Amendment, "[a] prosecutor's argument violates due process if it 'infect[s] the trial with unfairness." Weaver v. Bowersox, 438 F.3d 832, 840 (8th Cir. 2006) (quoting Darden v. Wainwright, 477 U.S. 168, 181 (1986)). "[A] court should only grant habeas relief if the state's 'closing argument was so inflammatory and so outrageous that any reasonable trial judge would have sua sponte declared a mistrial.'" Id. (quoting James v. Bowersox, 187 F.3d 866, 869 (8th Cir. 1999)). See also Rousan v. Roper, 436 F.3d 951, 960 (8th Cir. 2006) ("To grant habeas relief on an inappropriate comment from a prosecutor, the comment must be so inappropriate as to make the trial fundamentally unfair.") (citing Darden).

Tramble raised the closing argument issue in his direct appeal. The Missouri appellate court concluded that, "[v]iewed in their entirety, it is clear that the State's references were to remind the jury that opening statements are not evidence and that defendant's counsel had not produced the evidence he promised during his opening statement. Furthermore, … the State's argument was a fair response to Defendant's opening and closing statements and was not unwarranted." (Resp. Exh. E at 14-15)

The appellate court's analysis comports with federal law regarding improper closing argument. The prosecutor's rebuttal comments, when viewed in context, were relatively brief and confined to ensuring that the jury understood that the defense theory, as outlined during opening statement, was not supported by evidence. The comments did not directly or indirectly comment on Tramble's choice not to testify. Rather, the comments addressed defense counsel's representations and potential expert testimony. Before closing argument, the trial court instructed the jury that opening statements should not be considered as evidence. Similarly, it instructed that the jury must not consider any statement or remark or argument of any attorney as evidence. (Resp. Exh. A at 704-05 (referring to Missouri Approved Criminal Instruction 302.02)) Under federal law, a jury is presumed to follow the court's instructions. See Weeks v Angelone, 528 U.S. 225, 234 (2000).

While some might find the prosecutor's rebuttal comments in this case to have been close to the line, they did not clearly cross the line.[7] The comments were given shortly after the court instructed jury not to consider opening statement or argument as evidence. Further, the prosecutor's comments were not so inappropriate as to render Tramble's trial "fundamentally unfair." Rousan, 436 F.3d at 960. Therefore, the Court cannot say that the state court's adjudication of the claim "was contrary to, or involved an unreasonable application of, federal law as determined by the Supreme Court, or was an unreasonable determination of the facts in light of the evidence presented in state court." Cole, 623 F.3d at 1187. Accordingly, Tramble is not entitled to habeas relief on the basis of the prosecutor's rebuttal closing argument.

---

[7] The Court is also mindful that it "should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." Donnelly v. DeChristoforo, 416 U.S. 637, 647 (1974). See also Gardner, 396 F.3d at 992 (quoting same).

### b.    Defense Expert Gene Gietzen

Tramble's second ground arguably raises two related issues of ineffective assistance of counsel associated with potential defense expert Gene Gietzen.  The first issue is whether defense counsel was constitutionally ineffective when he referred to the testimony of Mr. Gietzen during opening statement.  The second issue is whether defense counsel was constitutionally ineffective in failing to call Mr. Gietzen during the defendant's case-in-chief.

Tramble raised both of the issues relating to Mr. Gietzen in his Rule 29.15 post-conviction motion.  Gietzen, defense counsel, and Tramble each testified at the post-conviction evidentiary hearing.  The record from that hearing establishes, among other things, that defense counsel had been in regular communication with Mr. Gietzen in preparing for trial.  Mr. Gietzen was provided access to evidence as well as records associated with potential prosecution experts.  Mr. Gietzen submitted reports and letters outlining his analyses, opinions, and thoughts about the case.  It is not disputed that Mr. Gietzen was available and prepared to testify.  (Resp. Exh. F at 37-43)

Defense counsel further explained to the motion court that he expected to use Mr. Gietzen's testimony to rebut anticipated expert testimony relating to blood splatter and blood drying times.  Accordingly, defense counsel referred to Mr. Gietzen's anticipated expert testimony during opening statement.  In particular, counsel indicated that Mr. Gietzen would testify in response to experiments conducted by anticipated prosecution witness Jenna Oakes-Smith.  When the state rested its case-in-chief without presenting the anticipated evidence, counsel chose to reconsider whether it was advisable to use Mr. Gietzen's testimony, or whether such an approach might backfire, opening the door to potentially damaging blood splatter and

blood drying time testimony.  Defense counsel used a break in the trial to reassess his strategy and consult with Mr. Gietzen.  Both defense counsel and Mr. Gietzen concluded that it would not be wise to use Mr. Gietzen's testimony, and he was not called as a witness.  (Resp. Exh. F at 42-45, 52-53)

After hearing testimony, the Rule 29.15 motion court found that trial counsel had intended to call Mr. Gietzen as a witness when the trial started, but reconsidered after the state rested without calling blood expert Jenna Oaks-Smith.  In reaching his decision to not call Mr. Gietzen, counsel was given time until the next day to decide how to proceed, and consulted with Mr. Gietzen.  Both counsel and Mr. Gietzen believed it would be best if Mr. Gietzen did not testify.  Defense counsel "felt that it was a victory for the defense that the State had not called these [expert] witnesses.  There were several issues with [Oakes-Smith's testimony], including the explanation of the length of time blood took to dry and whether the blood on [Tramble's] shoes came from blunt force trauma rather than the [metal pipe]."  (Resp. Exh. G at 226-27) Defense counsel concluded that Mr. Gietzen "could have hurt the case."  (Id. at 227)

Upon considering all of the testimony and evidence, the motion court concluded, among other things, that defense counsel had "thoroughly explored Mr. Gietzen's examinations and opinions regarding the evidence and the State's case and determined that it would not be in [Tramble's] best interest to produce [that] witness."  (Resp. Exh. G at 232)  The motion court similarly concluded that defense counsel's opening statement accurately reflected the evidence the defense planned to present at trial…  [I]t was only because of how the case played out that trial counsel did not call Gietzen."  (Id.)  The motion court, therefore, denied Tramble's motion. The Missouri Court of Appeals affirmed, concluding that, "the record demonstrates that

counsel's decision not to call Gietzen was reasonable trial strategy. The motion court's findings and conclusions in this regard are not erroneous." (Resp. Exh. J at 4)

The Eighth Circuit has explained that, "failing to fulfill a promise made in an opening statement to call a witness or to present evidence has amounted to ineffective assistance of counsel," but only where such failure was not justified by a reasonable trial strategy. Williams v. Bowersox, 340 F.3d 667, 671-72 (8th Cir. 2003) (reviewing arguably conflicting case law from multiple circuits). Yet "failing to present witnesses promised in an opening is not always an error of a constitutional dimension." Id. at 671-72 (citing cases).

In this case, the State's adjudication of the expert witness issue was entirely consistent with applicable federal law. Further, the determination was, in fact, quite reasonable given the way Tramble's case actually played out. "This was not all that unusual, for sometimes trials take unpredictable twists. To meet those twists, a plan at the start of a trial sometimes must be adjusted to meet the changed circumstances." Schlager v. Washington, 113 F.3d 763, 769 (7th Cir. 1997) (affirming the denial of habeas corpus relief where defense counsel predicted that both the defendant and an expert would testify but ultimately neither testified due to changed circumstances). Accordingly, to the extent Tramble's second ground rests on a claim that trial counsel was ineffective in disclosing potential expert witness Mr. Gietzen during opening statement, or failing to call Mr. Gietzen during the defendant's case-in-chief, that claim should be denied.

c.   **Advising Tramble not to Testify**

Finally, the Court and the State have interpreted Tramble's second ground as also raising an issue of ineffective assistance of counsel associated with Tramble's decision not to testify in

his own defense.  As both the State motion court and appellate court found, this Court likewise finds that counsel was not ineffective and, ultimately, Tramble made a knowing and voluntary decision not to testify.

At the Rule 29.15 motion hearing, both Tramble and trial counsel testified that they believed Tramble was going to testify when the trial began.  The motion court found that "[t]rial counsel credibly testified … that he disclosed [Tramble's] prior convictions [during voir dire] because they were confident [Tramble] would testify and [counsel] was concerned about jurors considering his prior convictions as a propensity to commit other crimes."  (Resp. Exh. G at 233) Tramble advised the motion court that he wanted to testify, despite his prior convictions. Tramble explained to the motion court that he did not change his mind about testifying "until the end."  (Id. 225-26)

The motion court found that trial counsel knew that Tramble wanted to testify and had prepared him to testify in his own defense.  At the beginning of trial, counsel was confident that Tramble would, in fact, testify.  But for Tramble's intention to testify, counsel would not have disclosed Tramble's prior convictions during voir dire.  (Resp. Exh. G at 227-28)

Like the expert testimony issue involving Mr. Gietzen, the decision on whether Tramble should testify changed "after the State rested without calling [a] certain police officer."  (Id. at 228)  Counsel explained that, it was near the end of their case that Tramble decided not to testify. (Id.)  At that time, Tramble passed counsel a note indicating he no longer wished to testify.  The motion court reviewed the record regarding Tramble's decision not to testify, including the lengthy inquiry by the trial judge, and concluded that Tramble's claim of ineffective assistance was refuted by the record.  (Id. at 234)  The motion court held that the "record … clearly reflects

that [Tramble] voluntarily made his decision … whether he would testify at trial.  Further,

counsel's advice with regard to whether [Tramble] should testify was reasonable trial strategy

given the circumstances and evidence at trial."  (Id. at 236)  The Missouri Court of Appeals

affirmed the motion court.  (Resp. Exh. J at 5)

The Missouri courts' resolution of this claim reflects a reasonable application of federal

law, namely the performance prong of Strickland.  First, it is not disputed that, at the outset of

the trial, both counsel and Tramble expected and intended Tramble to testify.  Counsel prepared

Tramble to testify.  Accordingly, it was a reasonable, and likely wise, strategy to disclose

Tramble's prior convictions during voir dire in order to identify and remove unfavorable jurors.

Second, the State presented less evidence than expected.  In such situations, it would be

reasonable to reconsider the benefits of having a defendant testify.  These are not easy decisions,

and "[j]udicial scrutiny of counsel's performance is highly deferential, indulging a strong

presumption that counsel's conduct falls within the wide range of reasonable professional

judgment."  Bucklew v. Luebbers, 436 F.3d 1010, 1016 (8th Cir. 2006) (citing Strickland, 466

U.S. at 689).  Perhaps most importantly, the record fully supports the State courts' conclusion

that it was Tramble's voluntary and informed decision not to testify.  Accordingly, to the extent

Tramble's petition can be read to include a claim that his counsel was constitutionally ineffective

in disclosing Tramble's prior convictions[8] or in advising Tramble not to testify, such a claim

lacks merit and should be denied.

---

[8]  Trial counsel's decision to disclose Tramble's prior convictions during voir dire can
only be criticized with the benefit of hindsight.  Such hindsight analysis, however, is
improper under the Strickland standard.  See Cole v. Roper, 623 F.3d 1183, 1189 (8th
Cir. 2010); Williams v. Bowersox, 340 F.3d 667, 672 (8th Cir. 2003).

## IV.  Conclusion

The Court concludes that Tramble is not entitled to federal habeas relief on any of the grounds presented to this Court.  Tramble has failed to establish that his state court proceedings were contrary to, or involved an unreasonable application of, clearly established federal law, or based upon an unreasonable determination of the facts presented in those proceedings.  See 28 U.S.C. § 2254(d).  Moreover, an evidentiary hearing is not warranted because the existing "record already contains all the facts necessary to resolve [Tramble's] claim[s]." Johnston v. Luebbers, 288 F.3d 1048, 1060 (8th Cir. 2002) (explaining that habeas petitioners are entitled to evidentiary hearings only under narrow circumstances). See also 28 U.S.C. § 2254(e)(2). Finally, Tramble has failed to make a substantial showing of the denial of a constitutional right sufficient to justify the issuance of a Certificate of Appealability.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Petitioner's request for an evidentiary hearing be **DENIED**.

**IT IS FURTHER RECOMMENDED** that the petition of Collin M. Tramble, II, for habeas corpus relief be **DENIED**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability not be issued in this case.

The parties are advised that they have fourteen (14) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that the failure to file timely objections may result in a waiver of the right to appeal questions of fact.  See Thompson v. Nix, 897 F.2d 356, 357-58 (8th Cir. 1990).

Dated this __4th__ day of June, 2015.

*John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE